GREENLEAF C. BATCHELDER *vs.* NATHANIEL STURGIS & others.

The defendants conveyed an estate to the plaintiff, with a covenant that the same was free from all incumbrances, by a deed dated the 7th of October, 1845: The premises were then subject to a lease, dated the 20th of September, 1844, for three years, at an annual rent of $575, and the lessee was in possession under the lease: At the time of the conveyance, the plaintiff made a mortgage of the estate to one of the defendants, to secure the payment of $10,500, in five years, with annual interest, at the rate of 5½ per cent. from the 7th of October, 1845: The mortgagee, at the same time, gave the plaintiff a written promise, that, until September 1st, 1847, the interest on the mortgage should be $520, annually, notwithstanding the agreement for 5½ per cent, and that until September, 1847, he would pay the taxes on the estate: In an action on the covenant against incumbrances, it was held, that the agreement between the parties, as to interest and taxes, did not amount to an accord and satisfaction for the incumbrance of the lease.

The diminished value of an estate, in consequence of an incumbrance upon it, is not the measure of damages for a breach of the covenant against incumbrances, unless the estate was purchased by the grantee for the purpose of a resale, and that fact was communicated to or known by the grantor.

THIS was an action for a breach of the covenant against incumbrances, contained in a deed of conveyance, (the consideration of which was $10,500) of a certain estate in Boston, from the defendants to the plaintiff, dated the 7th of October, 1845. The action was commenced on the 7th of October, 1846. The breach alleged was, that, at the time of the conveyance, the premises were subject to a lease, made by the defendants on the 20th of September, 1844, to Horatio G. Livermore, for three years, at a yearly rent of $575, and that the tenant was then in possession of the premises under his lease.

At the trial, before *Wilde*, J., the plaintiff obtained a verdict, which was to be set aside, and a new trial granted, if, in the opinion of the court, it was against the evidence, or if any of the rulings and instructions of the judge were erroneous; and the case was reported accordingly for the consideration of the whole court. Several questions were made at the trial, and reserved by the report; two of which only were considered by the court, and are therefore necessary to be stated.

The plaintiff having proposed to introduce evidence of the diminished value of the premises, in consequence of the incumbrance of the lease, the defendants objected thereto, and the judge ruled, that, in order to avail himself of this evidence, the plaintiff must prove, that he purchased the premises for the purpose of selling the same again. The plaintiff thereupon introduced evidence to that effect, and then called witnesses, who testified, that, in their opinion, upon a sale of the premises subject to the unexpired lease, the price of the land would be thereby diminished about twenty-five cents per square foot. But it did not appear, that the plaintiff, at the time of the purchase, made his intention known to the defendants, or that they knew that the purchase was made for the purpose of a resale, or for any other particular purpose.

It was in evidence, on the part of the defendants, that the plaintiff had notice of the lease before he agreed to purchase the estate; that simultaneously with the conveyance to the plaintiff, he made a mortgage thereof to Russell Sturgis, one of the defendants, as a trustee for the heirs of Susan Sturgis, to secure the payment of the sum of $10,500, in five years from the 7th of October, 1845, with annual interest at the rate of five and one half per cent; that the mortgagee gave the plaintiff a written obligation, that, until the 1st of September, 1847, the interest on the amount secured by the mortgage should be $520 annually, notwithstanding the agreement for five and a half per cent, and, that until September, 1847, the mortgagee would pay (and he did accordingly pay) the taxes on the estate.

The defendants contended, that the abatement of interest, and the agreement to pay taxes, amounted to an accord and satisfaction between the parties, for the incumbrance of the lease; and the evidence was left to the jury accordingly. The jury having found by their verdict, that there was no accord and satisfaction, the defendant moved to set the verdict aside as against evidence.

*E. Blake*, for the defendants.

Batchelder *v.* Sturgis & others.

*W. R. P. Washburn* and *G. Minot,* for the plaintiff.

FLETCHER, J.    This is an action of covenant broken. The defendants, by their deed dated October 7th, 1845, conveyed to the plaintiff an estate in Boston, and covenanted that the premises were free from all incumbrances.    The breach alleged was a lease made by the defendants of the premises .dated September 20th, 1844, for three years ; that the .essee was in possession under the lease ; and that the lease was in full force at the time of the conveyance to the plaintiff.    The lease had about two years to run at the time of the conveyance.    The object of the suit is to recover damages for this incumbrance upon the estate.    The verdict was for the plaintiff, and the defendants move to set it aside as against the evidence, and for a new trial on account of some of the rulings of the judge at the trial.

No question has been made as to certain of the rulings which are set out in the report, and the court have therefore had no occasion to consider or to express any opinion upon them.

It appeared that the plaintiff gave his note for $10,500 of the purchase money, secured by a mortgage of the premises. The note was to run five years at five and a half per cent interest.    It appears, that at the time of the transaction, one of the defendants gave the plaintiff an obligation that he should be required to pay but $520 interest annually, instead of the interest expressed in the note, and that this defendant alone would pay the taxes on the estate up to September, 1847.    It was maintained, on the part of the defendants, that this arrangement was an accord and satisfaction for the incumbrance of the lease ; and the question being left to the jury upon the evidence, and the jury not having found in accordance with the defendants' position, a motion is now made to set aside the verdict as against the evidence.

We do not see how this evidence could be regarded as establishing an accord and satisfaction.    This agreement as to the interest and taxes was entered into at the time of making the deed, and before there was any breach of the covenant

It was a part of the same transaction. If this agreement shows any thing, therefore, it shows that the lease should have been exempted from the deed. But not having been exempted from the deed, the evidence was not of a character to control the legal effect and operation of the covenants in the deed.

Another objection, on the part of the defendant, is, that evidence was permitted to be given to the jury, that the plaintiff bought the estate for the purpose of selling the same again, and also evidence consisting of the opinion of persons as to the effect of the lease upon the sale of the estate ; and that the jury gave their verdict on the principle, that the plaintiff had purchased the estate with a view to sell it again, and awarded damages on account of the injurious effect of the lease upon the sale. It does not appear, that the plaintiff, at the time of the purchase, made known to the defendant, that he was making the purchase with a view to sell again ; or that the defendants had any knowledge that the plaintiff was purchasing for any particular purpose ; or that the estate was sold to the plaintiff by the defendants to sell again, or for any particular purpose.

Under these circumstances, the court are of opinion, that it was erroneous to permit the plaintiff to go into evidence as to the motives by which he was actuated, and as to the objects which he had in view in making the purchase, in order to enhance the damages, when no notice was given to the defendants of such motives and objects. The defendants surely ought not to be affected by secret purposes and plans of the plaintiff, which were not made known to them. There are cases, where purchases are made expressly for particular purposes, and where the party may be liable for extrinsic damages, on account of the loss of the particular purpose or object. But this is not within that class.

Further, the effect of this lease upon the sale of the estate, which appears to be the ground on which the damages were assessed, does not appear to the court to be the true rule of damages in such a case. What effect the lease would have

upon the sale must in its very nature be imaginary, and can be supported only by speculative opinions and conjectures ; and, of course, in this case, the effect of the lease on the sale was shown only by the conjectural opinions of witnesses. This is quite too loose and uncertain a mode of estimating damages.

It is laid down as a rule, in several cases, that the profits which a party has failed to make cannot be taken into account in estimating the damages for a defective title to land.

So, in the contract of marine insurance, which is eminently a contract of indemnity, an agreement to insure a cargo will not, in case of loss, include the speculative profits of the adventure, though profits may be expressly and especially insured. So, if the title to premises leased fail, the lessor is not bound to indemnify the lessee, for a loss of custom in a business which he may have established on the premises. And, in general, the damages for a breach of covenant or obligation must be such as the party suffers in respect to the particular thing which is the subject of the contract, and not such as may have been accidentally occasioned, or supposed to be occasioned, in his business or affairs.

In New York, in the case of *Rickett* v. *Sneider*, 9 Wend 423, it was held, that when the covenant against incumbrances is broken, by reason of an unexpired term, which is the present case, the rule of damages is the annual value of the estate, or the annual interest on the purchase money. This rule may do justice in some, perhaps in many, cases ; but this court is not prepared to adopt it as a general rule. When the incumbrance has been removed, the general rule in this court fixes the damages at the amount paid to remove the incumbrance. The party may recover any just and reasonable sum, which has been expended to remove the incumbrance. The general doctrine on the subject is thus laid down by this court, in the case of *Harlow* v. *Thomas*, 15 Pick. 66, 69 : "If the covenantee has fairly extinguished the incumbrances, he ought to recover the expenses necessarily incurred in doing it. If they remain and consist of mort-

gages, attachments, and such liens on the estate conveyed as do not interfere with the enjoyment of it by the covenantee, he can recover only nominal damages. But if they are of a permanent nature, like the perpetual servitudes in this case, such as the covenantee cannot remove, he should recover a iust compensation for the real injury resulting from their continuance."

The rule is, that for such incumbrances as a covenantee cannot remove, he shall recover a just compensation for the real injury resulting from the incumbrance. Though it is desirable to have as definite and precise rules, upon the subject of damages, as are practicable, it seems impossible to establish any more precise general rule in this class of cases. Cases must go to the jury for an assessment of damages on this general principle, and with such instructions, as may be proper and applicable to the circumstances of each case. One of the modes in which the damages may be assessed is the annual value, and that may perhaps be found to be the just rule in this case.

The damages here having been assessed upon an erroneous principle, the verdict must be set aside, and a new trial granted.