**In re James PRUETT, Debtor.**

**James PRUETT, Plaintiff,**

**v.**

**AMERICAN INCOME LIFE INSURANCE COMPANY, Richard Neal and Debbie Gamble, Defendants.**

Bankruptcy No. 97–41491M.
Adversary No. 97–4072.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Dec. 18, 1997.

Jean M. Madden, Little Rock, AR, for Debtor.

Robert J. Brown, Little Rock, AR, for Defendants.

### MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

James Pruett ("Debtor") seeks the turnover from American Income Life Insurance Company ("American") of monies owed to the Debtor for commissions in which American has asserted a post-petition right of recoupment. The Debtor also seeks damages and an order of contempt for American's alleged violation of the automatic stay and employment discrimination against the Debtor as prohibited by 11 U.S.C. § 525.

The Court has jurisdiction to hear this matter as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and to enter a final judgment in the case. The following shall constitute the Court's findings of fact and

conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

The Debtor was affiliated with American for approximately six months in 1992. He later returned to American in March 1994, remaining with the company until he resigned in May 1997. The Debtor sold insurance policies and received a commission for each policy sold under the terms of an agency contract with American.

In accordance with the contract, American advanced the Debtor commissions calculated on a percentage of the anticipated commissions the Debtor would earn in the future as premiums were paid. The Debtor was permitted to draw the advances to cover business and living expenses. As premiums were renewed, a portion of the renewal was payable to the Debtor as commissions. American applied a portion of the Debtor's commission from renewals to the Debtor's indebtedness to American for advances. After the Debtor's liability for an advance on a commission was paid, the Debtor became entitled to all of that percentage of the renewal premium that represented his commission.

Shortly before filing for bankruptcy, the Debtor agreed to take no more advances on newly sold policies and to apply half the money earned from accrued commissions from renewals to liabilities for previous advances from American. The Debtor had seven different accounts, five of which were paid out.

The Debtor filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code on April 3, 1997, and thereafter American, pursuant to established policy, applied all accrued commissions from renewals against the Debtor's liability for advances. The record is unclear how much was actually taken from the Debtor's account. The Debtor's description was, "I have that on that paper over there. They have held almost eighteen thousand from me in the last three months. So whatever that is, minus that, that's what I've gotten up to a year." (Tr. at 30.) The Debtor scheduled a debt owed to American in the sum of $17,-000.00, but did not schedule the money due him by American as an asset.

A hearing on the merits was conducted in Little Rock, Arkansas, on May 30, 1997. The Debtor testified that American employees discriminated against him by giving him only stale leads on potential policy sales and by refusing to book appointments for him through the company's phone room. The Debtor stated that this treatment caused his production to diminish significantly in the two month period before he left the company.

Richard Neal, a state general agent for American, testified that the Debtor was not excluded from phone room privileges, but rather that the phone room was gradually terminated because it proved too costly to maintain and that the Debtor welcomed the opportunity to book his own appointments. Neal also testified that the Debtor was not singled out for stale leads but that all leads which Neal supplied his agents were worked on a systematic and routine basis. He stated that the Debtor's drop in production was probably due to a family move from one city to another that entailed relocating the Debtor's mobile home.

The Court dismissed the complaint against Richard Neal and Debbie Gamble at the conclusion of the Debtor's case in chief and took the case against American under advisement. The Debtor has filed a brief in support of his position. No brief has been filed by American.

The Debtor argues that American exercised a right of setoff without obtaining relief from the automatic stay. American argued at the trial that it exercised a common law right of recoupment which is not subject to the automatic stay contained in 11 U.S.C. § 362.

## I

## SETOFF/RECOUPMENT

The right of setoff and the right of recoupment are equitable doctrines similar in scope and sometimes referred to interchangeably. 5 *Collier on Bankruptcy,* ¶ 553.10 (Lawrence P. King ed., 15th ed.1995). *See, e.g., Walker v. First Commer-*

*cial Bank,* 317 Ark. 617, 621–22, 880 S.W.2d 316, 318–19 (1994); *Hill v. Barnes,* 208 Ark. 432, 435, 186 S.W.2d 675, 676 (1945). As stated in Collier, "[R]ecoupment is in the nature of a right to reduce the amount of a claim, and it does not involve independent obligations. By definition recoupment may arise only out of the same transaction or occurrence that gives rise to the liability sought to be reduced." 5 *Collier on Bankruptcy,* ¶ 553.10 (Lawrence P. King ed., 15th ed.1995). Rather than a cause of action, recoupment is a defense to be used to reduce the plaintiffs claim by the amount of payment or credit due from the plaintiff to the defendant. *State v. Lovett–Carnahan Co.,* 179 Ark. 43, 14 S.W.2d 233 (1929).

■ A typical example of the proper exercise of recoupment involves a creditor's claim for pre-petition overpayment as a defense against a debtor's post-petition claim when both claims arise under the same contract. *Photo Mechanical Servs., Inc. v. E.I. Dupont De Nemours & Co., Inc. (In re Photo Mechanical Servs., Inc.),* 179 B.R. 604, 613 (Bankr.D.Minn.1995); *In re Vaughter,* 109 B.R. 229, 232 (Bankr.W.D.Tex.1989) quoting *In re American Central Airlines, Inc.,* 60 B.R. 587, 590 (Bankr.N.D.Iowa 1986); *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 157 (10th Cir.1986) citing *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984).

■ For recoupment to apply, both claims must arise out of the same contract or occurrence and some type of overpayment must have occurred. *Steinberg v. Illinois Dept. of Mental Health & Developmental Disabilities (In re Klingberg Schools),* 68 B.R. 173, 178 (N.D.Ill.1986), *aff'd, Steinberg v. Illinois Dept. of Mental Health & Developmental Disabilities (In re Klingberg Schools),* 837 F.2d 763 (7th Cir.1988); *Photo Mechanical Servs., Inc. v. E.I. Dupont De Nemours & Co., Inc. (In re Photo Mechanical Servs., Inc.),* 179 B.R. 604, 613 (Bankr.D.Minn.1995); *In re Pub. Serv. Co.,* 107 B.R. 441, 444 (Bankr.D.N.H.1989).

The majority view is that when an insurance company advances commissions to an insurance agent and that agent later files a petition in bankruptcy, the insurance company may recoup those monies previously advanced as they accrue, post-petition, to the agent. *Wineburg v. Knights of Columbus (In re Sherman),* 627 F.2d 594, 595 (2nd Cir.1980) (holding that chapter 7 debtor was not entitled to further compensation on commissions until the renewal commissions exceeded what had already been paid by the insurer); *In re Ruiz,* 146 B.R. 877, 881 (Bankr.S.D.Fla.1992) (ruling that insurer could recoup advances by retaining post-petition commissions generated by chapter 13 debtor's pre-petition work); *Williams v. Tomer (In re Tomer),* 128 B.R. 746, (Bankr. S.D.Ill.1991) (finding that chapter 7 debtor, having received commissions on policies pre-petition, was not owed further commissions on those policies until advances were repaid to insurer), *aff'd, Williams v. Tomer (In re Tomer),* 147 B.R. 461 (S.D.Ill.1992).

■ The record in this case establishes clearly that American exercised a right of recoupment and not the right of setoff by its post-petition action. American's claim arose out of the same contract as the Debtor's claim and involved a pre-petition advance to the Debtor, thus falling squarely within the definition of a recoupment. *Photo Mechanical Servs., Inc. v. E.I. Dupont De Nemours & Co., Inc. (In re Photo Mechanical Servs., Inc.),* 179 B.R. 604, 613 (Bankr.D.Minn.1995). American's post-petition retention of commissions served as a determination of the net liability between the Debtor and American under the employment agreement. *See In re Ruiz,* 146 B.R. 877, 881 (Bankr.S.D.Fla.1992).

## II

## THE AUTOMATIC STAY

### 11 U.S.C. § 362

■ In a bankruptcy case, the distinction between the exercise of the right of setoff and the exercise of the right of recoupment is important because the exercise of the right of setoff is governed by the automatic stay while the exercise of the right of recoupment is not. 11 U.S.C. § 553(a)(2) (1995); *Lee v. Schweiker,* 739 F.2d 870, 878 (3d Cir. 1984); 5 *Collier on Bankruptcy,* ¶ 553.09 (Lawrence P. King ed., 15th ed.1996). Be-

cause American exercised a right of recoupment, the Debtor has failed to establish either a right to a turnover or the exercise of a right of setoff in violation of 11 U.S.C. § 553(a)(2). Therefore, the motion to hold American in contempt for violating the automatic stay is without merit.

## II

### MOTION FOR CONTEMPT FOR VIOLATION OF 11 U.S.C. § 525(d)

The Plaintiff's complaint is most uncertain as to the allegation for violation of 11 U.S.C. § 525 and the relief the Debtor seeks for the purported violation. Section 525(b) provides in part that a private employer may not terminate the employment of, or discriminate with respect to the employment against, an individual who is a debtor solely because the debtor filed bankruptcy. 11 U.S.C. § 525(b) (1994).

Discussion of this issue is not warranted because the record fails to establish any discrimination against the Debtor solely because of the filing of the petition for relief. For an example of a case in which employment discrimination against a debtor did occur, see *In re Hopkins*, 66 B.R. 828 (Bankr.W.D.Ark. 1986). Furthermore, the Plaintiff's complaint does not ask for any relief for the alleged violation of 11 U.S.C. § 525 except for the turnover of commissions which, as previously discussed, were lawfully subject to the Defendant's right of recoupment. Therefore, the Plaintiff's complaint is dismissed.

IT IS SO ORDERED.